IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KYLE MULLINS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>*Acting Commissioner of Social Security*, )<br>)<br>Defendant. ) | Case No. 1:22-cv-211-SMD |

# **OPINION & ORDER**

In February 2019, Kyle Mullins ("Mullins") filed for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, and for Supplemental Security Income ("SSI") under Title XVI. He alleged disability beginning May 15, 2018. Mullins's application was denied at the initial administrative level, and he received an unfavorable decision after a hearing before an Administrative Law Judge ("ALJ"). Mullins appealed the ALJ's decision to the Social Security Appeals Council where he submitted new evidence. The Appeals Council denied review and concluded that there was not a reasonable possibility that the new evidence would change the ALJ's decision. Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Mullins now appeals that decision under 42 U.S.C. § 405(g).[1] For the reasons that

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 13); Def.'s Consent (Doc. 12).

follow, the undersigned AFFIRMS the Commissioner's decision.

## I.   STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional

---

[2] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.\* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

2

and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991).[5]

---

[3] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

[5] A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

### III. ADMINISTRATIVE PROCEEDINGS

Mullins, who was thirty-nine years old at the time of the ALJ's decision, has a twelfth-grade education and past relevant work experience as a cell phone technician. Tr. 98, 237. He alleged disability due to OCD, anxiety, paranoia, anger problems, and migraine headaches. Tr. 236.

In the administrative proceedings before the Commissioner, the ALJ made the following findings with respect to the five-step evaluation process for his disability determination. At step one, the ALJ found that Mullins has not engaged in substantial gainful activity since his alleged onset date. Tr. 12. At step two, the ALJ found that Mullins suffers from the following severe impairments: "degenerative osteoarthritis and degenerative disc disease of the lumbar spine; migraine headaches; a major depressive disorder; and a generalized anxiety-related disorder versus a personality disorder with associated obsessive-compulsive ("OCD") tendencies[.]" Tr. 13. At step three, the ALJ

found that Mullins "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments[.]" Tr. 13.

The ALJ proceeded to determine Mullins's RFC, articulating it as follows:

> [T]he claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), but not a full range of such work as contemplated within SSR 83-10. For instance, he needed to work in a climate-controlled atmosphere free from significant exposure to excessive heat and humidity, which equates to more of an air-conditioned type of environment during the summer. The claimant could not climb any ladders, ropes[,] or scaffolds. The claimant could not work at unprotected heights. He could not be around or operate any potentially dangerous moving machinery, such as [] forklifts or motorized vehicles. The claimant could only work within routine and repetitive unskilled work in a lower stress employment setting involving only occasional decision making when on the job and occasional changes in his daily work routine. The claimant could only tolerate occasional non-transactional interaction with the public and occasional interaction with supervisors. The claimant could not perform assembly line work or work on a production team.

Tr. 14. At step four, the ALJ utilized the testimony of a VE and determined that Mullins is "unable to perform any past relevant work[.]" Tr. 18. At step five, the ALJ concluded that, "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." Tr. 18. These jobs include: "garment maker," "equipment cleaner," and "order filler." Tr. 19. Accordingly, the ALJ determined that Mullins had not been under a disability from May 15, 2018, through the date of his decision. Tr. 19.

**IV.    ANALYSIS**

Mullins asserts three arguments in opposition to the ALJ's findings: (1) the ALJ's RFC finding is not supported by substantial evidence; (2) the Appeals Council erred by not considering new evidence; and (3) the ALJ did not identify and resolve apparent conflicts between the VE's testimony and the Dictionary of Occupations Titles ("DOT"). Pl.'s Br. (Doc. 11) pp. 7-15. For the following reasons, these arguments fail.

> **a.   The ALJ did not err when he did not include all of Dr. Sanders's opinions in his RFC finding.**

Mullins argues that the ALJ erred by not discussing parts of Dr. Sanders's opinion he found persuasive. *Id.* at 7-9 Specifically, he contends that the ALJ's omission of Dr. Sanders's finding regarding how Mullins's psychological symptoms would impact work attendance makes it impossible for this Court to determine whether the RFC finding is supported by substantial evidence. *Id.* at 8-9.

The RFC determination is an assessment of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An RFC determination is within the authority of the ALJ and the assessment should be based on all relevant evidence of a claimant's ability to work despite his impairments. *Beech v. Apfel*, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). The ALJ need not discuss every piece of evidence so long as the ALJ considers the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ must, however, provide a sufficient rationale to link the evidence to the RFC determination. *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d

1064, 1066 (11th Cir. 1994)). Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268-69 (citing *Bowen v. Heckler*, 748 F.2d 629, 634-35 (11th Cir. 1984)).

An ALJ's RFC assessment need not "match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019). Indeed, an ALJ is not required to adopt every part of an opinion he finds persuasive. *Rivera Misla v. Comm'r of Soc. Sec.*, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021).

In his decision, the ALJ discussed Dr. Sanders's opinion at length. Particularly, the ALJ discussed Dr. Sanders's diagnosis of Mullins's OCD and his conclusion that Mullins's ability to perform mental work-related activities was at most moderately limited. Tr. 17. The ALJ found Dr. Sanders's opinion persuasive, except for his findings of markedly severe limitations. Tr. 17.

This Court finds that the ALJ's RFC findings are supported by substantial evidence. Although the ALJ found most of Dr. Sanders's opinion persuasive, he was not required to incorporate all of his findings related to work attendance into the RFC. Accordingly, because the ALJ did not have to adopt all of Dr. Sanders's opinion, and it is clear that ALJ considered Mullins's condition as a whole when formulating the RFC, the RFC finding is supported by substantial evidence.

**b.    The Appeals Council did not err by not considering new evidence.**

Mullins argues that the new evidence he submitted to the Appeals Council—specifically, the letter from South Central Alabama Mental Health—should have triggered review by the Appeals Council. Pl.'s Br. (Doc. 11) pp. 11-12. The letter, however, was not chronologically relevant.

A claimant can present new evidence at every stage of the administrative process—including before the Appeals Council. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). The Appeals council has discretion to not review an ALJ's denial of benefits, but must consider new, material, and chronologically relevant evidence that the claimant submits. *Id.* (quotations omitted) (citing *Ingram v. Comm'r Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)). Evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's hearing decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). Under certain circumstances, medical opinions given after an ALJ's decision may still be chronologically relevant. *Griffin v. Soc. Sec. Admin, Comm'r*, 842 F. App'x 339, 341 (11th Cir. 2021). But those circumstances do not exist here. Whether evidence meets the new, material, and relevant standard is a question of law, subject to de novo review. *Washington*, 806 F.3d at 1321.

Here, the Commissioner argues that the letter Mullins submitted is not chronologically relevant for two reasons: because (1) it is dated August 30, 2021, well after the ALJ's June 15, 2021, decision; and (2) it is not clear that the opinions contained in the letter relate to the relevant period of time between Mullins's onset date and the ALJ's decision. Comm'r's Br. (Doc. 16) pp. 11-12.

Mullins submitted a letter to the Appeals Council from Stephani Potter ("Potter"), an outpatient therapist whom Mullins has seen since 2019. Tr. 49. In the letter, Potter does not make it clear that her findings regarding Mullins's limitations relate the relevant period between his onset date and the ALJ's decision. Notably, all her findings are listed in the present tense. For example, Potter states that Mullins "currently meets the criteria for [] Major depressive disorder, recurrent episode, Moderate and [] Obsessive-Compulsive Personality Disorder." Tr. 49. Likewise, her conclusion that Mullins "has clearly defined limitations regarding social interactions" and "has issues with people interfering with task completion . . . and others touching him" are in the present tense. Tr. 49. Based on this wording, it is not clear that these findings, or the others listed throughout the letter, relate to the relevant period. Tr. 49-50 And although Potter states that Mullins has been her patient since 2019, that history does not show that her findings relate to the period between the onset date and ALJ's decision. Therefore, because Mullins has not shown that the letter is chronologically relevant, the undersigned concludes that the Appeals Council did not err in denying review.

      **c.**      **Any failure by the ALJ to identify and resolve apparent conflicts between VE testimony and the DOT was harmless error**

SSR 00-4p imposes a duty on ALJ's to identify and resolve apparent conflicts between DOT data and VE testimony. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). This duty is not fulfilled by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT. *Id.* Instead, the ALJ must identify any apparent conflict and resolve it. *Id.* This means an ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them. *Id.* at 1363.

An apparent conflict "is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365. "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* Put differently, a conflict is apparent if it is "seeming[ly] real or true, but not necessarily so." *Id.* at 1366.

During the hearing, the ALJ posed a hypothetical to the VE that included Mullins's RFC. In response, the VE testified that, even with the limitations described in the hypothetical, Mullins would be able to perform the jobs of Garment Sorter, Equipment Cleaner, and Order Filler. Tr. 80-81. Mullins argues that (1) there are apparent conflicts between the VE testimony and DOT definitions for the jobs listed by the VE and (2) the ALJ failed to identify and resolve those apparent conflicts. Pl.'s Br. (Doc. 11) pp. 13-15. For the following reasons, the undersigned disagrees.

### i. Equipment Cleaner

Mullins argues that an apparent conflict exists between the VE's testimony and the DOT description of the Equipment Cleaner position. Mullins provides two differences he perceives as conflicts: (1) although his RFC states he should avoid significant exposure to humidity, the equipment cleaner job requires occasional exposure to humidity; and (2) although his RFC prevents him from being around or operating potentially dangerous moving machinery, performing the equipment cleaner job would require him to be around machinery. Pl.'s Br. (Doc. 11) pp. 14-15.

The Commissioner argues that no such conflicts exist. He contends that there is no conflict between the RFC prohibiting exposure to significant humidity and the job requiring exposure to occasional humidity, and that the DOT qualifies that workers in this job "may" be exposed to certain machinery. Comm'r's Br. (Doc. 16) pp. 13-14. The undersigned agrees with the Commissioner.

In the DOT description of Machine Cleaner, which is the section number cited by the ALJ in his opinion, Tr. 19, workers in this job are only occasionally exposed to humidity. Machine Cleaner, DICOT 699.687-014, 1991 WL 678873. In his hypothetical, the ALJ restricted Mullins to avoid significant exposure to humidity. Tr. 79. Because of the difference in meaning between "occasional" and "significant," there is no apparent conflict between the levels of humidity exposure in the hypothetical and DOT.

Likewise, although the position description states that workers "[m]ay remove machine guards and accessories[,]" "[m]ay oil moving parts[,]" and "[m]ay clean floors

11

around machine[,]" this position does not conflict with the ALJ's hypothetical or Mullins's RFC. Machine Cleaner, DICOT 699.687-014, 1991 WL 678873. In his hypothetical and RFC finding, the ALJ requires Mullins to avoid "potentially dangerous moving machinery that would include [] forklifts, motorized vehicles, whether it's [] a delivery[/]light delivery van or courier automobile[.]" Tr. 79. The cleaning requirements here do not rise to the level of exposure restricted in the hypothetical and RFC. And it is not apparent that the type of machinery Mullins would be exposed to in this job is like that described in the ALJ's hypothetical. Thus, there is no apparent conflict based on the hypothetical and job description.

    **ii.    Order Filler**

Mullins points to two portions of the DOT description of the Order Filler position as raising a conflict with VE testimony: that a worker (1) "[c]onveys materials and items from receiving or production areas to storage or to other designated areas by hand, handtruck, or electric handtruck[;]" and (2) "[m]ay drive vehicle to transport stored items from warehouse to plant or to pick up items from several locations for shipment." Order Filler, DICOT 922.687-058, 1991 WL 688132; Pl.'s Br. (Doc. 11) p. 15.

The Commissioner argues that there is no apparent conflict because the narrative description for the Order Filler position clarifies that "the duties consist of any combination of the following duties, not just the duties mentioned by [Mullins]." Comm'r's Br. (Doc. 16) p. 14 (citation omitted). The undersigned agrees with the Commissioner.

First, handtrucks or electric handtrucks do not equal the types of motorized vehicles described in the ALJ's hypothetical to the VE. At the hearing, the ALJ's hypothetical stated that Mullins "[c]ould not be around or operate any potentially dangerous moving machinery that would include [] forklifts, motorized vehicles, whether it's like a delivery, light delivery van or courier automobile[.]"[6] Tr. 79. A handtruck—whether manual or electric—does not equal the type of machinery described in the ALJ's hypothetical.

Second, a worker in the Order Filler position "may" drive a vehicle to transport or pick up items. Importantly, though, the description does not require Mullins to operate a vehicle. Accordingly, there is no apparent conflict between the VE testimony and the DOT definition of Order Filler.

### iii. Garment Sorter

The ALJ did not identify and resolve an apparent conflict between VE testimony regarding the Garment Sorter position and the DOT. However, the VE testified that there are 47,000 Garment Sorter positions, 54,000 Equipment Cleaner positions, and 147,000 Order Filler positions available in the national economy. Tr. 81. Although the apparent conflict removes 47,000 possible jobs in the national economy, the other two positions leave approximately 200,000 available jobs. Because there are still a substantial number of jobs left in the national economy that Mullins could perform, the ALJ's failure to recognize

---

[6] Similarly, Mullins's RFC restricts him from operating "potentially dangerous moving machinery, such as [] forklifts or motorized vehicles." Tr. 14.

and resolve the apparent conflict concerning the garment sorter position was harmless error.

## V.   CONCLUSION

Accordingly, it is

ORDERED that the Commissioner's decision is AFFIRMED. A separate judgment will issue.

DONE this 29th day of August, 2023.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE